NOT FOR PUBLICATION                                                                            CLOSED

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                                      :
RYAN BROWN,                               :
                                                      :
    Plaintiff,                              :     Civil Action No. 09-2264 (JAP)
                                                      :
          v.                                   :     **OPINION**
                                                      :
CITY OF LONG BRANCH, *et al*,      :
                                                      :
    Defendants.                          :
_____:

PISANO, District Judge.

This matter comes before the Court upon the motion of Defendants City of Long Branch ("City"), Howard Woolley ("Woolley"), William Richards ("Richards"), and Tomas Shea ("Shea") to dismiss *pro se* Plaintiff, Ryan Brown's ("Brown"), Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or in the alternative, for a more definite statement under Rule 12(e). For the reasons discussed below, Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) is granted.

**I.     BACKGROUND**

The allegations in Brown's Complaint stem from the termination of his employment as a Special Law Enforcement Officer II ("SLEO") with the City. He claims that he was wrongfully terminated because he suffers from mental and emotional issues. (Compl. p. 3.) Specifically, Brown alleges that during an August 13, 2008 meeting held by Captain Muolo, he informed the City that he was seeking professional assistance for anxiety and depression. (*Id.*) He claims that during the

meeting his medical issues were made public knowledge. (*Id.*) Later that same day, Brown arrived at police headquarters for his overnight shift as a dispatcher and was informed that he was being placed on modified duty by the police administration. (*Id.* at 8.) The shift supervisor approached him in front of other co-workers and stated: "I heard you are depressed. What are you depressed about?" (*Id.*) Brown alleges that he immediately became anxious and asked the shift supervisor if he could leave. Although the supervisor recommended that Brown remain at headquarters until he calmed down and even offered to call an ambulance, Brown left work. (*Id.*) Brown claims that he saw his physician the following day who modified his medications. (*Id.* at 9.)

On August 20, 2008, Brown met with Captain Muolo to inform the Captain that he was upset that his medical information was disclosed. (*Id.* at 6.) Brown also claims that suffered from emotional and psychological distress when a co-worker discussed his medical issues in the presence of other co-workers. (*Id.*) Brown requested that Captain Muolo speak to his co-workers about the incident. (*Id.*) After the meeting, Brown claims that he was approached in the parking lot by Shea, the Internal Affairs Officer, who advised him that he should resign and proceeded to stare at him in a threatening manner. (*Id.* at 6.) Brown alleges that he subsequently felt threatened and afraid for his job and his safety. (*Id.* at 7.) He returned to his physician the following day who modified his medication and recommended that he not return to work for at least thirty days.[1] (*Id.* at 9.) At some point, he filed a formal complaint with the U.S. Department of Health and Human Services ("DHHS") about the violation of his right to medical privacy as well as a complaint with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* at 7.)

---

[1] Brown alleges that he attended an outpatient treatment program at St. Barnabas from October 8, 2008 until January 2009 as a result of the incident on August 20. (Compl. at 9.)

According to his Complaint, Brown was thereafter instructed to meet with Nancy Gallina, Ph.D ("Gallina") on October 2, 2008 who examined him to ensure that he was fit for duty as an SLEO. (*Id.*) Gallina concluded that Brown was a danger to himself and others and accordingly recommended that he be removed from his role as a SLEO.[2] (*Id.* at 4.) On October 15, 2008, the City issued Brown a Preliminary Notice of Disciplinary Action ("Notice") charging that he engaged in conduct unbecoming and violated police department rules and regulations because he omitted information on the employment application that he submitted in December 2004. (*Id.*) Specifically, Brown allegedly omitted the fact that he had pled guilty to contempt of court on his application. (*Id.* at 5.) On November 3, 2008, the Notice was amended to include Gallina's findings. (*Id.*)

A hearing was held on November 5, 2008 to review the allegations in the Notice. (*Id.*) During the hearing Brown alleges that he requested a reasonable accommodation from the City when he asked Defendants Woolley and Richards to reassign him to another role as a dispatcher. (*Id.*) This request was declined because as a dispatcher Brown would still be in close proximity to weapons. (*Id.*) At the meeting he asked Woolley for the opportunity to resign with dignity. (*Id.*) The City's attorney then drafted a resignation letter and Woolley advised Brown that if he signed the letter, the City would not provide prospective employers with negative feedback. (*Id.* at 12.) Two days later, the City issued a final report concluding that Brown was presently incapacitated and had been given the opportunity to resign, but declined the opportunity. (*Id.* at 5.) Brown was terminated on November 7, 2008. (*Id.* at 10-12.)

---

[2]On page five of his Complaint, Brown states that it was determined that he posed a danger to himself and others in his capacity as SLEO because he had immediate access to weapons. Although he does not indicate who made this conclusion, the Court assumes that this was one of Gallina's findings.

On January 16, 2009, Brown filed a Notice of Charge of Discrimination with the EEOC. Prior to receiving a right-to-sue letter Brown filed a five-count Complaint with this Court on May 13, 2009 alleging: (1) disability discrimination under the New Jersey Law Against Discrimination ("NJLAD"), the Americans with Disabilities Act ("ADA") and the New Jersey Conscientious Employee Protection Act ("CEPA"); (2) a hostile work environment; (3) retaliation in violation of NJLAD and CEPA; (4) infliction of emotional and intentional distress; and (5) wrongful termination. Defendants filed the instant Motion to Dismiss on July 24, 2009 for failure to state a claim under 12(b)(6) or in the alternative a Motion for a More Definite Statement under 12(e). On August 17, 2009, Brown received a dismissal and notice of rights from the EEOC.

The Court analyzes the Complaint under 12(b)(6) because the pleading is not so vague or ambiguous that the opposing party could not respond. Fed. R. Civ. Pro. 12(e); *Idearc Media Corp. v. Advanced Directory Sales, Inc.*, 2009 WL 1803907, *2 (D.N.J. 2009).

## II.     DISCUSSION

### A.     Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), a court may grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted. Refashioning the appropriate standard, the United States Supreme Court found that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted); *see also Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (stating that standard of review for motion to dismiss

does not require courts to accept as true "unsupported conclusions and unwarranted inferences" or "legal conclusion[s] couched as factual allegation[s]" (internal quotation marks omitted)). Therefore, for a complaint to withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Twombly*, 127 S. Ct. at 1965 (internal citations and footnote omitted).

  **B.** **Legal Analysis**

   *i.* *Count I: Disability Discrimination under NJLAD and the ADA*

The NJLAD and the ADA are designed to prevent employment discrimination based on an employee's disability. *Victor v. N.J.*, 401 N.J. Super. 596, 609 (App. Div. 2008). To prove a prima facie disability discrimination claim a plaintiff must satisfy the following elements: "(1) plaintiff was handicapped or disabled within the meaning of the statute; (2) plaintiff was qualified to perform the essential functions of the position of employment, with or without the accommodation; [and] (3) plaintiff suffered an adverse employment action because of the handicap or disability[3]." *Id.*

Assuming arguendo, that Brown is in fact disabled under the statute, he cannot set forth a prima facie disability discrimination claim because Brown does not offer any facts indicating that he is capable of performing the essential functions of his job. Rather, he concedes that he is not otherwise qualified to perform the essential functions of his job. In *Davidson v. Atlantic City Police Department*, WL 533698 (D.N.J. June 28, 1999), the plaintiff acknowledged that was not qualified to perform the essential functions of his job because of his psychological impairments. The court

---

[3] The prima facie elements of disability discrimination under the ADA are essentially identical. *See Gaul v. Lucent Technologies, Inc.*, 134 F.3d 576, 580 (3d Cir. 1998).

found this statement significant in analyzing his prima facie disability discrimination claim. Similarly, Brown acknowledged in his Complaint, that Gallina determined that he was a danger to himself and others. As such, she recommended that he be removed from his capacity as an SLEO which required that he have immediate access to weapons. (Compl. at 2, 5.) Additionally, Brown was not able to perform the role of a dispatcher, which would have been a reasonable accommodation, because that role also required him to be in close proximity to weapons. Accordingly, the Court dismisses the NJLAD and ADA claims in Count I of the Complaint.[4]

### ii.     Count II: Hostile Work Environment

To establish a claim of a hostile work environment a plaintiff must show: (1) that the complained of conduct would not have occurred but for his disability; (2) "that the conduct was severe or pervasive enough to (3) make a reasonable [disabled person] believe that the (4) conditions of employment are altered and the working environment is hostile or abusive." *Lehmann v. Toys 'R' Us, Inc.*, 132 N.J. 587, 604-05 (1993); *Buffa v. N.J. State Dep't of Judiciary*, 56 Fed. Appx. 571, 576 (3d Cir. 2003) (applying the *Lehmann* framework to a hostile work environment claim based on disability).

The Court finds that Brown's hostile work environment claim fails because the conduct cited in the Complaint is not severe or pervasive. Brown argues that the incident with Shea in the parking lot serves as his factual basis for this claim. However, "[o]ccasional insults, teasing, or episodic instances of ridicule . . . are not enough" to establish severe or pervasive behavior worthy of establishing a hostile work environment claim. *Martinez v. Rapidigm, Inc.*, 290 Fed. Appx. 521, 525 (2008); *see also Brooks v. CBS Radio, Inc.*, 2009 U.S. App. LEXIS 18189, *15 (3d Cir. Jan. 9, 2009)

---

[4]Brown's CEPA claim in Count I is addressed below.

("It is well established that to prove the second element of a hostile work environment claim, a plaintiff must show that his workplace was 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002).)  Accordingly, Count II is dismissed.

    iii.    Count III: CEPA Claim

CEPA is designed to protect employees who engage in a protected activity, such as disclosing or threatening to disclose to an authority an activity which the employee reasonably believes is in violation of the law, from suffering retaliatory action by the employer. *N.J.S.A.* § 34:19-3. Retaliatory action is defined as "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment." *N.J.S.A.* § 34:19-2(e).  As such, the following elements must be satisfied to state a discriminatory retaliation CEPA claim: (1) the plaintiff reasonably believed that the employer was violating a law, rule, regulation or public policy; (2) the plaintiff performed a whistle-blowing activity; (3) an adverse employment action was taken; and (3) a causal connection exists between the whistle-blowing activity and the adverse employment action. *Klein v. UMDNJ*, 871 A.2d 681, 687 (N.J. Super. A.D. 2005).

The Court finds that Brown's CEPA claim fails for several reasons.  First, his Complaint does not indicate that he reasonably believed the employer was violating a law, rule, regulation or public policy.  Second, Brown did not engage in any whistle-blowing activity.  Although Plaintiff alleges that he filed a complaint with the DHHS and the EEOC there are no facts suggesting that the Defendants were even aware of these complaints.   Finally, even if the Defendants were aware, he

has pled no facts suggesting that his complaints were related to his ultimate termination. As such, Brown's CEPA claim in Count III is dismissed.

> iv.   Count IV: Intentional Infliction of Emotional Distress

To set forth a cause of action for the tort of intentional infliction of emotional distress a plaintiff must prove that (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was outrageous; (3) the defendant's actions proximately caused plaintiff's emotional distress; and (4) plaintiff's emotional distress was "so severe that no reasonable man could be expected to endure it." *Buckley v. Trenton Sav. Fund Soc.*, 111 N.J. 355, 366 (1988) (citing Restatement (Second) of Torts § 46 cmt. d.). The defendant's conduct must be "done with the intent to do the act and to produce the emotional distress, or in deliberate disregard of a high degree of probability that emotional distress will follow." *Buckley*, 111 N.J. at 366. Additionally, "the conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (citing Restatement (Second) of Torts § 46 comment d.) Courts have noted that it is "extremely rare to find conduct in the employment context which will rise to the level of outrageousness necessary to provide a basis for recovery." *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988); *Fregara v. Jet Aviation Business Jets*, 764 F. Supp. 940, 956 (D.N.J. 1991).

The facts that support Brown's intentional infliction of emotional distress claim are not extreme and outrageous. Brown cites two incidents where Defendants allegedly suffered from emotional distress. The first incident occurred on August 13, 2008 when he shift supervisor asked him why he was depressed. The second incident occurred on August 20, 2008 when Shea told him that he should resign and stared at him as he left the parking lot. The Court finds that these two

isolated incidents do not rise to the level of extreme and outrageous conduct as contemplated by the tort and therefore dismisses Count IV.

     *v.*     *Count V: Wrongful Termination*

To sustain a wrongful termination claim, a plaintiff must show that his termination violated a "clear mandate of public policy." *Pierce v. Ortho Pharmaceutical Corp.*, 417 A.2d 505 (N.J. 1980). A *Pierce* claim requires "an expression by the employee of a disagreement with corporate policy, directive or decision based on a clear mandate of public policy" and a "sufficient expression of that disagreement to support the conclusion that the resulting discharge violates the mandate of public policy and is wrongful." *Tartaglia v. UBS PaineWebber, Inc.*, 197 N.J. 81, 109 (N.J. 2008). A complaint to a direct supervisor or to an outside agency will normally serve as a sufficient means of expression, whereas a remark to a co-worker would not. *Id.* Sources of public policy include legislation; administrative rules, regulations or decisions; and judicial decisions. *Id.* at 110. An at-will employee has a heavy burden of proving that a clear mandate of public policy was violated by his termination. *Pietrylo v. Hillstone Restaurant Group*, 2008 WL 6085437, at *5 (D.N.J. July 25, 2008).

Although Brown satisfied the expression requirement by complaining to Captain Muolo about the public disclosure of his medical records and by filing a complaint with the DHHS and the EEOC, he has not identified a "clear mandate of public policy" that was violated as a result of his termination. Count V is thereby dismissed.

### III.   CONCLUSION

For the reasons expressed above, the Court grants Defendants' Motion to Dismiss the Complaint. An appropriate order accompanies this Opinion.

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Dated: September 3, 2009